# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KATHY GALE FRENCH,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Case No. 1:16-cv-00940-SAB<br><br>ORDER GRANTING PLAINTIFF'S SOCIAL SECURITY APPEAL AND REMANDING THIS ACTION FOR FURTHER PROCEEDINGS<br><br>(ECF Nos. 15, 18) |

**I.**

**INTRODUCTION**

Plaintiff Kathy Gale French ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability benefits pursuant to the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Stanley A. Boone.[1]

Plaintiff suffers from gastroesophageal reflux disease, acute positional vertigo/right ear equilibrium dysfunction, hypothyroidism, left shoulder pain, obesity, cervical spondylosis, cervical herniated disc requiring fusion with residual radiculopathy, lumbar osteopenia and herniated nucleus pulposus with radiculopathy and bilateral sacroiliac joint fusion. For the reasons set forth below, Plaintiff's Social Security appeal shall be granted.

---
[1] The parties have consented to the jurisdiction of the United States Magistrate Judge. (See ECF Nos. 8, 11.)

1

# II.

# FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff protectively filed an application for a period of disability and disability insurance benefits on June 4, 2012, and a Title XVI application for supplemental security income on June 30, 2012. (AR 101, 102.) Plaintiff's applications were initially denied on December 14, 2012, and denied upon reconsideration on August 9, 2013. (AR 133-136, 143-147, 149-153.) Plaintiff requested and received a hearing before Administrative Law Judge Christine Hilleren ("the ALJ"). Plaintiff appeared for a hearing on November 24, 2014. (AR 24-72.) On January 2, 2015, the ALJ found that Plaintiff was not disabled. (AR 5-18.) The Appeals Council denied Plaintiff's request for review on May 9, 2016. (AR 1-3.)

### A. Relevant Hearing Testimony

Plaintiff appeared with counsel and testified at the November 24, 2014 hearing. (AR 28-58, 68.) Plaintiff was born on October 7, 1951, and was 63 years old on the date of the hearing. (AR 28.) Plaintiff was 5 foot 4 inches tall, weighed 195 pounds, and is right handed. (AR 29.) Plaintiff is married and lives with her husband who is on disability. (AR 29-30.) Plaintiff has been receiving retirement benefits since December 2013. (AR 30.) Plaintiff had insurance but is currently making too much money so it was just discontinued that month. (AR 57.)

Plaintiff has a driver's license and drives about once a week. (AR 30.) Plaintiff is not sure if she could get on a bus because of her disability. (AR 30.) Plaintiff's husband drove her to the hearing. (AR 30.) Plaintiff graduated from high school and has no problems with reading or writing. (AR 31.) Plaintiff took a computer class at adult school around 2010. (AR 31.) Plaintiff received a completion certificate for the class. (AR 31.)

Plaintiff has not worked since February 15, 2012. (AR 32.) Plaintiff worked for the County of Merced from 2008 to 2010 doing filing, reception, mail, mail delivery to government offices, computer work, etc. (AR 32.) Plaintiff would lift no more than five pounds in this position. (AR 32.) Plaintiff would sit four hours per day. (AR 32.)

From 2005 to 2006, Plaintiff worked for Directory Distributing Associates sorting mail, preparing packages to be sent via mail, and doing some customer service work. (AR 32-33.)

Plaintiff would lift ten pounds, and spoke with customers on the phone. (AR 33.) While it varied from day to day, Plaintiff would sit and stand about half the day each. (AR 33.) Plaintiff worked for Client Logic doing the same duties from 2003 to 2004. (AR 33-44.) Plaintiff worked for over 20 years at the same location, but the company had different names. (AR 34.) At one time, around 1998, Plaintiff was doing telesales for the company. (AR 34-35.) In addition to her mailroom duties, Plaintiff would do data entry and reception. (AR 35.) Plaintiff was a supervisor for a couple of years prior to 2000. (AR 35.) Plaintiff never lifted more than 10 pounds in any of her positions. (AR 36.)

Plaintiff stated that she is unable to work because she cannot stand for more than ten or fifteen minutes at a time. (AR 36.) Plaintiff is unable to stand to file or deliver messages to anyone. (AR 37.) Plaintiff has to sit down because her back is very painful. (AR 36.) Plaintiff can only sit for fifteen or twenty minutes and then gets pain in her lower back. (AR 36-37.) Plaintiff will have to get up and walk to stretch her legs because she gets stiff. (AR 37.) Walking also bothers her back and right hip. (AR 36.) Plaintiff can only walk for about fifteen minutes. (AR 36.) Plaintiff has problems looking down to do paperwork, because of her neck and left shoulder. (AR 36.) Plaintiff is primarily unable to work due to her difficulties standing and walking. (AR 37.) Plaintiff does not have the energy to work eight hours a day five days a week. (AR 55.)

Plaintiff is unable to lift more than five pounds because her left hand and arm are weaker than her right hand. (AR 37.) Plaintiff constantly drops things with her left hand. (AR 37.) For example, if Plaintiff is trying to wash dishes she will drop the dishes in the sink. (AR 37.) Plaintiff has no strength in her left arm and hand anymore. (AR 37.) Plaintiff has numbness in her finger and her arm at times. (AR 37.) About three times a week, Plaintiff's pain radiates down her left arm to her elbow and at times to her left leg. (AR 40.) Even after her fusion, Plaintiff has pain in her left arm that radiates down to her elbow three days a week. (AR 52.) Plaintiff will have pain in her arm, numbness that goes down into her fingers, and she is unable to grip anything. (AR 53.) Her hand goes numb and she will drop things because she has no strength in her left hand. (AR 53.) Plaintiff is unable to lift a heavy pan or dish. (AR 54.) She

had an x-ray of her shoulder around October and the doctor told her it showed wear and tear. (AR 56.) Plaintiff also has muscle spasms in her lower back about three times per week. (AR 38.) The pain in her back starts above the waist and goes all the way across and down her back into her hip. (AR 54-55.) When she has a muscle spasm, she will take her medication. (AR 38.)

Plaintiff is taking Norco when she needs it, about three or four times a week. (AR 38.) Plaintiff takes Flexeril for her muscle spasms at night because it makes her sleepy. (AR 38-39.) Plaintiff takes Gabapentin twice a day. (AR 39.) Plaintiff also takes extra strength Tylenol and Motrin for the inflammation in her back and shoulder. (AR 39.) The medications take the edge off her pain, but it never completely goes away. (AR 39.) On an average day, Plaintiff's pain is 8 out of 10 without her medication and 6 out of 10 after she takes her medication. (AR 39.) Plaintiff has gastroesophageal reflux disease but it is under good control with her medication. (AR 55.) Plaintiff also occasionally will have numbness in her left leg down to her foot. (AR 68.) Plaintiff has fallen three times in the last three to four years. (AR 68.) She fell and broke her nose and both hands. (AR 68.) Plaintiff also broke her left thumb after a fall. (AR 68.) Plaintiff does not feel safe walking and that is why she uses her cane all the time. (AR 68.)

Plaintiff also takes Cymbalta for depression. (AR 43.) It helps with her depression and also with her pain. (AR 43.) Plaintiff is not having depressive symptoms on the Cymbalta. (AR 43.) Plaintiff has not sought any mental health treatment. (AR 43.) Plaintiff's medications make her dizzy and cause sleepiness. (AR 49.) Plaintiff does not have any energy because of her medications. (AR 50.)

Plaintiff also has dizziness from her medication and a problem with her right ear that causes her equilibrium to be off. (AR 44.) The doctors examined her ear but did not find anything. (AR 44.) Plaintiff was given exercises to do for her ear, bending her head a certain way. (AR 44-45.) It has helped and now Plaintiff knows what to do if her ear acts up, but it takes several days to recover. (AR 45.) Plaintiff only does the exercises as needed. (AR 45.) She will have a problem once or twice a week. (AR 45.) When her dizziness starts it will eventually settle over a couple of days and Plaintiff will walk with a cane and be very careful. (AR 50.) When that happens Plaintiff is unable to do anything and just sits in her chair the

whole day. (AR 50-51.)

Plaintiff recently underwent a cervical fusion. (AR 40.) Plaintiff's neck is better but her shoulder still bothers her. (AR 40.) Plaintiff is still having pain and muscle spasms in her back. (AR 40.) Plaintiff's pain is relieved by taking her medication and then sitting in her recliner or lying down. (AR 40-41.) Plaintiff uses her recliner every day because it takes the pressure off her back. (AR 41.) When she uses the recliner, she elevates her feet about waist high. (AR 41.) Plaintiff elevates her legs six hours a day. (AR 41.) Plaintiff sits in her chair all day and cannot get up to do anything. (AR 42.)

About two and a half years ago, Plaintiff was prescribed a cane by her neurologist, Dr. Hylton. (AR 42.) Plaintiff uses the cane throughout the day and does not go anywhere out of her house without it. (AR 42.) Plaintiff uses the cane even when she walks to the kitchen in her house. (AR 51.) She uses it all the time. (AR 51.) Plaintiff has had three injections in her neck and back. (AR 42-43.)

Plaintiff gets up in the morning and sits for two hours watching television and reading the newspaper. (AR 46.) Plaintiff then takes a shower and gets dressed. (AR 46.) Plaintiff's husband helps her to get dressed. (AR 46.) She has difficulty fastening her bra and pulling up her pants. (AR 46-47.) Plaintiff will unload the dishwasher or do laundry, but that is all she is able to do. (AR 46.) Plaintiff then sits in her recliner for the remainder of the day. (AR 46.) Plaintiff might make a sandwich during the day but she is not able to cook any kind of meals because she cannot stand very long. (AR 47.) Plaintiff might make a sandwich for her husband and get some fruit and a drink. (AR 49.) They will make a sandwich or put something in the microwave unless Plaintiff's husband decides to make a meal. (AR 49.) Plaintiff's husband does all the heavy cleaning. (AR 47.) Plaintiff's husband is disabled, but he does not need any assistance with his care. (AR 47.)

Plaintiff seldom goes to church, the movies, the mall, or anywhere other than doctor's appointments. (AR 47.) Plaintiff just stays at home because she cannot do any shopping. (AR 47.) Plaintiff will go to the store to get what she needs but cannot go by herself anymore. (AR 48.) Plaintiff goes to the store with her husband and will use an electric cart to get around the

store because her back is very painful if she tries to walk around. (AR 48.) Her husband gets items off the shelf. (AR 48.)

Plaintiff has a small dog that her husband takes care of. (AR 48.) Plaintiff only helps by brushing the dog. (AR 48.)

A vocational expert ("the VE"), Stephen B. Schmidt, also testified at the hearing. (AR 60-67.)

**B.  ALJ Findings**

The ALJ made the following findings of fact and conclusions of law.

- Plaintiff met the insured status requirements of the Social Security Act through December 31, 2014.
- Plaintiff has not engaged in substantial gainful activity since the alleged onset date of February 15, 2012.
- Plaintiff has the following severe impairments: obesity, cervical spondylosis, cervical herniated disc requiring fusion with residual radiculopathy, lumbar osteopenia and herniated nucleus pulposus with radiculopathy and bilateral sacroiliac joint fusion.
- Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of one of the listed impairments.
- Plaintiff has the residual functional capacity to perform a range of work at the light exertional level. Specifically, she can lift and/or carry up to twenty pounds occasionally and ten pounds frequently, stand and/or walk with normal breaks for a total of six hours in an eight-hour workday, and sit for a total of about six hours in an eight-hour workday. Plaintiff is also limited to occasional climbing, balancing, stooping, kneeling, crouching, and crawling, and could frequently handle and finger with bilateral hands.
- Plaintiff is capable of performing past relevant work as an administrative clerk. This work does not require performance of work-related activities precluded by Plaintiff's residual functional capacity.
- Plaintiff has not been under a disability as defined in the Social Security Act, from February 15, 2012, through the date of the decision.

(AR 10-17.)

## III.

## LEGAL STANDARD

To qualify for disability insurance benefits under the Social Security Act, the claimant must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five step sequential evaluation process to be used in determining if a claimant is disabled. 20 C.F.R. § 404.1520; Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits. 42 U.S.C. § 405(g). In reviewing findings of fact in respect to the denial of benefits, this court "reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be

disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means more than a scintilla, but less than a preponderance. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (internal quotations and citations omitted). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 955 (9th Cir. 2002) (quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995)).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill, 698 F.3d at 1159 (quoting Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006). However, it is not this Court's function to second guess the ALJ's conclusions and substitute the court's judgment for the ALJ's. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

## IV.

## DISCUSSION AND ANALYSIS

Plaintiff alleges that the ALJ erred by 1) failing to account in the RFC for all the limitations stemming from Plaintiff's cervical spondylosis and cervical herniated disc which were found to be severe; 2) finding Plaintiff's vertigo to be non-severe; 3) failing to properly consider the opinion of Plaintiff's treating physician; and 4) failing to consider Plaintiff's work history. Plaintiff seeks remand for further proceedings. Defendant responds that the ALJ properly considered the medical evidence and found that Plaintiff has the residual capacity to perform a range of light work.

### A. Physician Opinion

Plaintiff argues that the ALJ erred in rejecting the opinion of Drs. Hylton and Garcia who were her treating physicians. Defendant counters that the ALJ provided legitimate and specific reasons to reject the opinions of Plaintiff's treating physicians and that Dr. Tella's August 2013 opinion is substantial evidence to support discounting Drs. Hylton and Garcia's opinions and the

RFC determination.

The weight to be given to medical opinions depends upon whether the opinion is proffered by a treating, examining, or non-examining professional. See Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995). In general a treating physician's opinion is entitled to greater weight than that of a nontreating physician because "he is employed to cure and has a greater opportunity to know and observe the patient as an individual." Andrews v. Shalala, 53 F.3d 1035, 1040-41 (9th Cir. 1995) (citations omitted). If a treating physician's opinion is contradicted by another doctor, it may be rejected only for "specific and legitimate reasons" supported by substantial evidence in the record. Ryan v. Commissioner of Social Sec., 528 F.3d 1194, 1198 (9th Cir.) (quoting Bayless v. Barnhart, 427 F.3d 1121, 1216 (9th Cir. 2005)).

Where the treating physician's opinion is contradicted by the opinion of an examining physician who based the opinion upon independent clinical findings that differ from those of the treating physician, the nontreating source itself may be substantial evidence, and the ALJ is to resolve the conflict. Andrews, 53 F.3d at 1041. However, if the nontreating physician's opinion is based upon clinical findings considered by the treating physician, the ALJ must give specific and legitimate reasons for rejecting the treating physician's opinion that are based on substantial evidence in the record. Id.

The contrary opinion of a non-examining expert is not sufficient by itself to constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, however, "it may constitute substantial evidence when it is consistent with other independent evidence in the record." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). The ALJ need not accept the opinion of any physician that is brief, conclusory, and unsupported by clinical findings. Thomas, 278 F.3d at 957.

"The treating physician's opinion is not" "necessarily conclusive as to either physical condition or the ultimate issue of disability." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). But, the ALJ may not simply reject the treating physician's opinion on the ultimate issue of disability. Ghanim v. Colvin, 763 F.3d 1154, 1154 (9th Cir. 2014). While Plaintiff argues that the ALJ did not provide clear and convincing reasons to reject the treating physician's

opinions, since the opinions of Drs. Hylton and Garcia are contradicted by the opinions of Dr. Rush and the agency physicians the ALJ must only provide specific and legitimate reasons that are supported by substantial evidence. Ghanim, 763 F.3d at 1154.

The ALJ found that Plaintiff's condition worsened in 2014 and she underwent an anterior cervical fusion at the C4-C5 and C5-C6 vertebrae with anterior cervical discectomy and decompression at C4-C5 and C5-C6. (AR 14.) However, on August 1, 2013, Plaintiff presented complaining that she was only able to stand 10 minutes, her left leg was numb, and she was having left neck pain. (AR 529.) Dr. Hylton found Plaintiff to have a stiff range of motion, weakness on the left 3/5, ankle. (AR 529.) Plaintiff was diagnosed with "Severe L lumbar [indistinguishable] cervical spasms[.]" (AR 529.) Plaintiff was prescribed Soma and Tramadol and Dr. Hylton noted "Cannot work. Needs back surgery." (AR 529.) The ALJ gave this opinion little weight finding that it was conclusory and inconsistent with the other evidence, including the conservative treatment rendered at the time. (AR 14.) Yet, the record demonstrates that Plaintiff was without insurance as of October 4, 2012 and was unable to afford additional testing.[2] (AR 363, 362.) After Plaintiff was insured again, she was referred to Dr. Diaz for treatment of the herniated disc at L5 S1 on January 16, 2014. (AR 525.)

Further, the opinion is not inconsistent with subsequent findings in the record. Plaintiff had a follow up on September 19, 2013, where she reported having a lot of muscle spasms in her neck and back and pain in the left lateral hip. (AR 528.) Dr. Hylton noted that Plaintiff was walking very slow and stiff. (AR 528.) Plaintiff was found to be very tender on the left lateral hip and had to increase her Soma and Tramadol. (AR 528.)

Plaintiff was seen again on December 5, 2013, and was noted to be walking with positional scoliosis. (AR 526.) Plaintiff had severe tenderness in her right low back. (AR 526.)

Plaintiff saw Dr. Garcia on May 3, 2014. (AR 524.) Dr. Garcia found Plaintiff to have decreased strength on the left and a positive straight leg test. (AR 524.) Plaintiff's gait was antalgic. (AR 524.) Dr. Garcia recommended epidural injections. (AR 524.) A March 4, 2014

---

[2] However, the Court also notes that Plaintiff declined physical therapy for her back, hand, and drop foot, and orthotics in June 2012 prior to the record indicating that she had lost her insurance. (AR 299, 337.)

10

x-ray of the lumbar spine showed osteopenia with endplate deformities at L1 and L5 vertebral bodies, no evidence of recent fracture, but limited flexion and extension. (AR 441.) A March 20, 2014 x-ray of the cervical spine showed minimal lower cervical spondylosis. (AR 440.)

On April 21, 2014, Plaintiff reported no pain relief, but that her stiffness had improved by fifty percent. (AR 509.) Dr. Garcia noted weakness and numbness in the left leg. (AR 509.)

On May 19, 2014, Dr. Garcia reported leg pain gone 100 percent, but notes left leg and left arm weakness and numbness. (AR 498.) Plaintiff had pain in her lower back and neck. (AR 498.)

On July 14, 2014, Plaintiff reported cervical neck pain. (AR 488.) Plaintiff was found to have weakness and numbness in her left shoulder. (AR 487.)

On August 4, 2014, Plaintiff had a pre-operative appointment. (AR 476.) Plaintiff was noted to have improved twenty-five percent since her injection six week prior. (AR 475.) Her neck was tight and she continued to have pain in her neck, lower back, left arm, and left leg. (AR 475.) Plaintiff was seen again on August 18, 2014, but there are no notes in the record regarding that doctor's findings. (AR 463.)

Plaintiff had spinal surgery on September 5, 2014. (AR 531-533.) There are no medical records after September 5, 2014, but on October 24, 2014, Dr. Diaz wrote a note that Plaintiff had pelvic surgery and was unable to sit more than thirty minutes or stand more than twenty minutes. (AR 530.) The ALJ only provided some weight to this opinion because it was offered in the post-surgical recovery period and is not a full representation of Plaintiff's post-recovery ability. (AR 14-15.) Further, the ALJ found it to be vague as Dr. Garcia did not specify whether the standing/sitting limitations related to Plaintiff's ability at one time or for the entire day. (AR 15.)

The ALJ gave great weight to the August 8, 2013 opinion of Dr. Tella finding it consistent with and supported by the evidence. (AR 15.) For example, the ALJ found that Dr. Tella's limitations were consistent with Plaintiff's cervical fusion. (AR 15.) However, there is no medical evidence in the record finding that the limitations opined by Dr. Tella are consistent with Plaintiff's cervical fusion. Dr. Tella completed a residual functional capacity assessment on

reconsideration. Based upon evidence of degenerative disc disease of the left spine with left leg weakness, Dr. Tella opined on August 8, 2013, that Plaintiff had more restrictions than were found on the initial review. (AR 126-129.) But, Dr. Tella did not have Dr. Hylton's findings of August 1, 2013, and thereafter, or any records of the treatment provided by Dr. Garcia and Plaintiff's subsequent spinal surgery. While Dr. Tella's opinion supports that Plaintiff's condition was worsening and the ALJ found that her condition had subsequently worsened to the point that she needed a cervical fusion, the ALJ relied on evidence prior to the worsening of Plaintiff's condition to reject the treating physicians' opinions.

The Court finds that the ALJ did not provide specific and legitimate reasons that are supported by the record to reject the treating doctor's opinions.

**B.     Residual Functional Capacity Assessment**

Plaintiff argues that the ALJ erred by failing to include all her limitations in the RFC. A claimant's residual functional capacity is the most the individual can still do despite her limitations. 20 C.F.R. § 404.1545(a)(1). In assessing the claimant's RFC, the ALJ is to consider all medically determinable impairments, including those impairments that are not severe. 20 C.F.R. § 404.1545(a)(2). Where a claimant has physical limitations, the ALJ considers the claimant's ability to do physical activities, "such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching)[.]" 20 C.F.R. § 404.1545(b).

"The hypothetical an ALJ poses to a vocational expert, which derives from the RFC, 'must set out all the limitations and restrictions of the particular claimant.' " Valentine v. Commissioner of Social Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009) (quoting Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir.1988)). Therefore, if an RFC does not take into account all of the claimant's limitations it is defective. Valentine, 574 F.3d at 690.

Plaintiff contends that the ALJ erred by finding that her vertigo was nonsevere at Step Two and not including limitations in the RFC due to her vertigo symptoms. Defendant replies that the ALJ properly determined that Plaintiff's vertigo was not severe and considered all functional limitations that were established by the reliable medical evidence.

"An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual[']s ability to work.'" Smolen, 80 F.3d at 1290 (citations omitted). In considering an impairment or combination of impairments, the ALJ must consider the claimant's subjective symptoms in determining their severity. Id. However, symptoms are not medically determinable physical impairments and cannot by themselves establish the existence of an impairment. Titles II & XVI: Symptoms, Medically Determinable Physical & Mental Impairments, & Exertional & Nonexertional Limitations, SSR 96-4P (S.S.A. July 2, 1996). In order to find a claimant disabled, there must be medical signs and laboratory findings demonstrating the existence of a medically determinable ailment. Id. "[R]egardless of how many symptoms an individual alleges, or how genuine the individual's complaints may appear to be, the existence of a medically determinable physical or mental impairment cannot be established in the absence of objective medical abnormalities; i.e., medical signs and laboratory finding. . . ." Id.

In determining the severity of Plaintiff's impairments, the ALJ considered that there was evidence in the record of positional vertigo and an equilibrium problem in the right ear as Plaintiff reported dizziness. (AR 11.) The ALJ found that Plaintiff's vertigo does not cause more than minimal limitation on her functioning as she testified that her physician had provided her with generally effective neck bending exercises to do when experiencing symptoms. (AR 11.) The ALJ further considered that Plaintiff ambulates with a normal gait and denied any loss of balance or focal weakness. (AR 11.)

Plaintiff first complained of dizziness at an appointment on February 10, 2012. (AR 342.) Upon examination, Plaintiff was found to have normal gait and no nystagmus. (AR 342.) The record notes that Plaintiff felt better after lavage of her right ear. (AR 432.)

Plaintiff complained of ongoing dizziness on March 19, 2012. (AR 340.) Again she was found to have no nystagmus and a normal gait and was referred to a neurologist. (AR 430.)

Plaintiff complained of vertigo and that the medication was not helping on April 16, 2012, and had a normal examination. (AR 339.) On April 23, 2012, Plaintiff was seen in the emergency room complaining of numbness in her left arm, hand and leg. (AR 314.) She denied

having any loss of balance or focal weakness, but stated she was having some dizziness when she tilted her head back. (AR 314.) Plaintiff was noted to have a normal gait, examination was unremarkable, a CT scan of her head had no acute intracranial findings, and her EKG came back with normal sinus rhythm and normal axis. (AR 310.) On April 30, 2012, Plaintiff complained of dizziness, and the record notes focal neurological symptoms but contains no objective findings. (AR 338.)

On May 17, 2012, Plaintiff complained of increased dizziness, and the doctor noted she did appear briefly vertiginous at the appointment and Plaintiff was provided with a copy of vertigo exercises. (AR 301, 337, 368.) Plaintiff reported on May 31, 2012 that her vertigo was doing better. (AR 300.)

On October 4, 2012, the record notes that Plaintiff walks with good balance and no significant foot drop. (AR 363.)

While the record notes that Plaintiff complained of dizziness, the record notes no objective findings other than the May 17, 2012 note that Plaintiff did appear briefly vertiginous at the appointment. After May 31, 2012, there are no indications that Plaintiff continued to have dizziness and she denied dizziness at subsequent appointments. (AR 410, 429, 507.) While the record contains Plaintiff's subjective complaints that she suffers from dizziness, substantial evidence supports the ALJ's determination that Plaintiff's dizziness was not a severe impairment.

In determining Plaintiff's RFC, the ALJ considered Plaintiff's complaints of dizziness and found that there is no objective support for an ongoing balance disturbance despite her allegations of dizziness. (AR 14.) The ALJ only needs to include in the RFC those limitations that are supported by substantial evidence in the record. Robbins, 466 F.3d at 886. As discussed above, substantial evidence supports the ALJ's finding that there is no objective support for an ongoing balance disturbance and the ALJ did not err by failing to include such limitations in the RFC.

Plaintiff also argues that the ALJ erred by failing to include limitations due to her cervical spondylosis and cervical herniated disc requiring fusion with residual radiculopathy.

Since the weight provided to the treating physician opinions could be determinative of the issues raised regarding these limitations, the Court declines to address this issue.

### C. Plaintiff's Credibility

Plaintiff also argues that the ALJ erred by failing to consider Plaintiff's work history in assessing her credibility. Defendant replies that Plaintiff has not challenged the well supported bases that the ALJ provided for rejecting her allegations regarding her functional limitations and symptoms and therefore has conceded that these are valid bases to reject Plaintiff's credibility. Defendant also argues that Plaintiff does not identify any controlling Ninth Circuit precedent or statutory authority that requires the ALJ to discuss the claimant's work history.

This Court has previously rejected the argument that the ALJ is required to discuss a claimant's work history in the credibility discussion where, as here, it is addressed elsewhere in the opinion and the ALJ provided other clear and convincing reasons to reject the claimant's testimony. See Reyes v. Comm'r of Soc. Sec., No. 1:15-CV-01436-SAB, 2016 WL 7034741, at *11 (E.D. Cal. Dec. 1, 2016); Rocha v. Comm'r of Soc. Sec., No. 1:15-CV-01298-SAB, 2016 WL 7034739, at *16 (E.D. Cal. Dec. 1, 2016). However, since this matter is being remanded for further evaluation of the medical evidence which may affect the credibility determination, the Court declines to further address the credibility finding.

### D. Remand for Further Proceedings

The ordinary remand rule provides that when "the record before the agency does not support the agency action, ... the agency has not considered all relevant factors, or ... the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014). This applies equally in Social Security cases. Treichler, 775 F.3d at 1099. Under the Social Security Act "courts are empowered to affirm, modify, or reverse a decision by the Commissioner '*with or without* remanding the cause for a rehearing.'" Garrison v. Colvin, 759 F.3d 995, 1019 (9th Cir. 2014) (emphasis in original) (quoting 42 U.S.C. § 405(g)). The decision to remand for benefits is discretionary. Treichler, 775 F.3d at 1100. In

15

Social Security cases, courts generally remand with instructions to calculate and award benefits when it is clear from the record that the claimant is entitled to benefits. Garrison, 759 F.3d at 1019.

The Court finds that this is not one of the rare circumstances where remand for payment of benefits would be warranted. Accordingly, this action shall be remanded for further administrative proceedings.

## V.
## CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ did not provide legitimate and specific reasons to reject the treating physician opinions. Accordingly,

IT IS HEREBY ORDERED that Plaintiff's appeal from the decision of the Commissioner of Social Security is GRANTED and this action is remanded for further administrative proceedings. It is FURTHER ORDERED that judgment be entered in favor of Plaintiff Kathy Gale French and against Defendant Commissioner of Social Security. The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated: __**August 18, 2017**__

UNITED STATES MAGISTRATE JUDGE